Colin C. O'Brien, State Bar No. 309413
Earthjustice
1 Sansome Street, Suite 1700
San Francisco, CA 94104
Tel: 415-217-2000/Fax: 415-217-2040
cobrien@earthjustice.org

*Local Counsel for Plaintiffs Alliance of Nurses
for Healthy Environments et al. (Additional
Plaintiffs and Counsel Listed on Signature Page)*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIANCE OF NURSES FOR HEALTHY ENVIRONMENTS, AMERICAN LUNG ASSOCIATION, AMERICAN PUBLIC HEALTH ASSOCIATION, AMERICAN THORACIC SOCIETY, CENTER FOR BIOLOGICAL DIVERSITY, CITIZENS FOR PENNSYLVANIA'S FUTURE, CLEAN AIR COUNCIL, CLEANAIRE NC, CONSERVATION LAW FOUNDATION, ENVIRONMENTAL DEFENSE FUND, GEORGIA INTERFAITH POWER & LIGHT, MICHIGAN ENVIRONMENTAL COUNCIL, NATURAL RESOURCES DEFENSE COUNCIL, NORTHEAST OHIO COMMUNITY RESILIENCE CENTRE, RIO GRANDE INTERNATIONAL STUDY CENTER, SAVANNAH RIVERKEEPER, and SIERRA CLUB, | Civil Action No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| LEE M. ZELDIN, Administrator, United States Environmental Protection Agency, in his official capacity, | |
| Defendant. | |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    1

**INTRODUCTION**

1. Congress entrusted the U.S. Environmental Protection Agency ("EPA" or "Defendant") with the profound obligation of ensuring that all Americans breathe clean air. Yet EPA has refused to carry out one of its essential duties that Congress mandated to achieve this objective—the designation of areas where levels of air pollution violate federal clean air standards and thus seriously threaten public health. EPA's unlawful refusal to take this nondiscretionary action is depriving communities across the country of the Clean Air Act's most fundamental protections.

2. Plaintiffs Alliance of Nurses for Healthy Environments, American Lung Association, American Public Health Association, American Thoracic Society, Center for Biological Diversity, Citizens for Pennsylvania's Future, Clean Air Council, CleanAIRE NC, Conservation Law Foundation, Environmental Defense Fund, Georgia Interfaith Power & Light, Michigan Environmental Council, Natural Resources Defense Council, Northeast Ohio Community Resilience Centre, Rio Grande International Study Center, Savannah Riverkeeper, and Sierra Club bring this action for declaratory judgment and injunctive relief to compel Defendant Lee M. Zeldin ("Administrator"), in his official capacity as the EPA Administrator, to carry out his overdue legal obligation to officially identify, via publication in the Federal Register, those areas of the country that are suffering from dangerous levels of fine particulate matter pollution, a necessary step toward bringing those areas into compliance with federal clean air standards by legally mandated deadlines.

3. Millions of Americans are currently being exposed to unhealthy concentrations of particulate matter with a diameter of 2.5 micrometers or less, also known as fine particulate matter or $PM_{2.5}$. Exposure to $PM_{2.5}$ pollution can cause cardiovascular disease, respiratory disease, cancer, and premature death.

4. The Clean Air Act requires EPA to establish health-based national ambient air quality standards to limit the amount of particulate matter allowed in the outdoor air. Areas with pollution levels that violate these standards must clean up their air, and areas whose emissions contribute to poor air quality in downwind communities must reduce those emissions.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    2

5. On February 7, 2024, based on extensive scientific study, EPA strengthened the health-protective primary national ambient air quality standard for $PM_{2.5}$ by adopting a final rule setting the annual limit at 9.0 micrograms per cubic meter ($\mu g/m^3$) ("the 2024 standard"). EPA's promulgation of this final rule on February 7, 2024, triggered the Administrator's non-discretionary duty to "promulgate the designations of all areas" of the country as meeting ("in attainment of") or not meeting ("in nonattainment of") the strengthened standard within two years—*i.e.*, by February 7, 2026—and to publish notice of such promulgation in the Federal Register. 42 U.S.C. § 7407(d)(1)(B)(i), (d)(2)(A).

6. The statutory deadline for EPA's non-discretionary duty has passed and the Administrator has not yet promulgated designations for all areas of the nation. EPA's failure to meet the deadline that Congress prescribed violates the Clean Air Act and deprives Plaintiffs and their members of the health and other protections to which they are entitled. Plaintiffs thus seek declaratory relief and an order to compel the Administrator to complete the mandatory designation process forthwith.

**JURISDICTION AND VENUE**

7. This action arises under the Clean Air Act, 42 U.S.C. § 7407(d). This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2) and 28 U.S.C. §§ 1331 and 1361. This Court may grant the relief Plaintiffs request pursuant to 42 U.S.C. § 7604(a) and 28 U.S.C. §§ 2201, 2202, and 1361. Plaintiffs have a right to bring this action pursuant to the Clean Air Act, 42 U.S.C. § 7604(a)(2); 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

8. By certified letter to the Administrator posted on February 10, 2026, Plaintiffs provided notice of this action as required by 42 U.S.C. § 7604(b)(2) and 40 C.F.R. Part 54. More than 60 days have elapsed since Plaintiffs provided such notice, and the Administrator has continued his failure to complete the mandatory designation process.

9. Venue is proper in this Court under 28 U.S.C. § 1391(e) because a) Plaintiff Sierra Club maintains its principal place of business in this district; b) this district is one in which Defendant EPA resides and performs its official duties; and c) a substantial part of the events and omissions

giving rise to this claim has occurred and is occurring in this district because Defendant's failure to act as complained of herein threatens the health of district residents, including members of Plaintiffs (as further detailed herein), and because EPA's Regional Office in San Francisco, California, has a substantial role in implementing the nondiscretionary duties at issue in this case.

10.     Pursuant to Civil L.R. 3-2(c), (d), this case is properly assigned to the San Francisco or Oakland Division of this Court because Plaintiff Sierra Club's National Headquarters is located in Oakland, California, and Defendant EPA's Region 9 Office is located in San Francisco, California.

**PARTIES**

11.     Plaintiff **Alliance of Nurses for Healthy Environments** ("ANHE") is a national nonprofit organization based in Maryland that works with nurses and nursing organizations across the country at the intersection of health and the environment. ANHE supports nurses in promoting planetary health and equity globally by educating and leading the nursing profession, advancing research, incorporating planet-safe practice, and influencing policy.

12.     Plaintiff **American Lung Association** is a corporation organized and existing under the laws of Maine. American Lung Association is a national nonprofit organization dedicated to a world free of lung disease and to saving lives by preventing lung disease and promoting lung health. Its Board of Directors includes pulmonologists and other health professionals.

13.     Plaintiff **American Public Health Association** is a nonprofit organization incorporated in Massachusetts, and has members from all fields of public health. Its issues include those affecting personal and environmental health and pollution control, chronic and infectious diseases, and health equity.

14.     Plaintiff **American Thoracic Society** is an international, nonprofit medical-professional organization organized and existing under the laws of the State of New York. Its members protect public health by preventing and treating respiratory disease, critical care illness, and sleep-disordered breathing through research, education, care, and advocacy.

15.     Plaintiff **Center for Biological Diversity** is a nonprofit 501(c)(3) corporation incorporated and existing under the laws of the State of California, with its main California

office in Oakland. The Center for Biological Diversity has over 93,000 members throughout the United States and the world. The Center for Biological Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law. Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked, the Center for Biological Diversity is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

16.    Plaintiff **Citizens for Pennsylvania's Future** is a nonprofit organization that works to aid the transition to a clean energy economy in Pennsylvania and beyond; to protect our air, water, and land; and to empower citizens to build sustainable communities for future generations.

17.    Plaintiff **Clean Air Council** ("CAC") is a nonprofit, membership-based organization dedicated to protecting and defending everyone's right to a healthy environment, including everyone's right to breathe clean air. CAC is headquartered in Philadelphia, Pennsylvania, with offices in Philadelphia and Pittsburgh, Pennsylvania, and Wilmington, Delaware.

18.    Plaintiff **CleanAIRE NC** is a 501(c)(3) nonprofit organization headquartered in Mecklenburg County, North Carolina. CleanAIRE NC works to protect the health of all North Carolinians through community-centered strategies to address air pollution, environmental injustice, and climate change. CleanAIRE NC partners with schools, healthcare systems, and community organizations to educate the public on the health impacts of air pollution, conducts Health Impact Assessments, and operates air monitoring programs to identify and address health risks from air pollution.

19.    Plaintiff **Conservation Law Foundation** is a nonprofit, membership-supported corporation organized and existing under the laws of the Commonwealth of Massachusetts. Conservation Law Foundation's mission is to protect New England's people, natural resources, and communities, by working to promote renewable energy and fight air and water pollution;

build healthy fishing communities and protect marine habitat; and fight sprawl, promote public transit and public health.

20.   Plaintiff **Environmental Defense Fund** is a national nonprofit corporation organized and existing under the laws of the State of New York. It links science, economics, and law to create innovative, equitable, and cost-effective solutions to society's most urgent environmental problems.

21.   Plaintiff **Georgia Interfaith Power & Light** ("GIPL") is a 501(c)(3) nonprofit organization headquartered in Decatur, Georgia. GIPL's mission is to inspire and equip communities of faith to promote environmental justice, sustainability, and the stewardship of Creation. GIPL partners with more than 350 congregations across the state of Georgia, representing a wide variety of faiths, and has over 150 congregationally-based member Green Teams working in partnership to advance GIPL's objectives.

22.   Plaintiff **Michigan Environmental Council** ("MEC") is a statewide environmental nonprofit organization founded in 1980 and based in Lansing, Michigan. MEC has over 100 member groups and a collective membership of over 300,000 people who live, recreate, and consume energy in Michigan. On behalf of its members, MEC advocates at the local, state, and federal level for lasting protections of its members' health and economic well-being, as well as protections for Michigan's air, water, and land. This includes promoting policies that protect Michigan residential utility ratepayers, increase adoption of clean energy sources, reduce harmful pollution, and address the causes of climate change.

23.   Plaintiff **Natural Resources Defense Council** ("NRDC") is a national nonprofit environmental membership organization, incorporated and existing under the laws of the State of New York, with hundreds of thousands of members nationwide. NRDC's purpose is to safeguard the Earth—its people, its plants and animals, and the natural systems on which all life depends. Part of NRDC's core mission is to improve air quality and protect public health by combatting air pollution.

24.   Plaintiff **Northeast Ohio Community Resilience Centre** is a 501(c)(3) nonprofit organization headquartered in Cleveland, Ohio, and established in 2011. Its mission is to create

equity in the African American community by addressing the cumulative impact of racial, economic, environmental and social justice inequities in education, employment, housing, and health, including health disparities caused by air pollution, by working to educate, advocate for, and empower the community.

25.   Plaintiff **Rio Grande International Study Center** ("RGISC," pronounced "risk") is a chartered nonprofit organization headquartered in Laredo, Texas, and founded in January 1994. RGISC is a frontline environmental advocacy group dedicated to using science, data, people power, and creative actions to preserve and protect the Rio Grande-Rio Bravo watershed, local ecosystems, and its people. RGISC pushes for a positive vision of our South Texas border region via research, public awareness campaigns, grassroots building, signature community events, and advocacy for local ordinances and policymaking.

26.   Plaintiff **Savannah Riverkeeper** is a 501(c)(3) nonprofit organization headquartered in Richmond County, Georgia, with additional offices in South Carolina and coastal Georgia. Savannah Riverkeeper works to protect and restore the 400-mile Savannah River and its 10,577-square-mile watershed through advocacy and education, tackling water, soil, and air pollution to sustain a healthy river for communities and ecosystems across the Savannah River basin. Through its Healthy Communities of Augusta initiative, Savannah Riverkeeper works to make the Augusta metropolitan area healthier and reduce the disproportionate industrial pollution burdens borne by Augusta residents by collaborating with stakeholders in the fields of education, healthcare, transportation, agriculture, and faith communities.

27.   Plaintiff **Sierra Club** is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland, California. It is dedicated to the protection and enjoyment of the environment.

28.   Collectively, Plaintiffs have over 1.5 million members, with members living, working, worshipping, and engaging in outdoor activities in all 50 states.

29.   Defendant Lee M. Zeldin is the Administrator of the EPA. In that role, he is charged with the duty to uphold the Clean Air Act and to take required regulatory actions according to the schedules established therein. Administrator Zeldin is sued in his official capacity.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                         7

## STATUTORY AND REGULATORY BACKGROUND

30. Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). One "primary goal" is "pollution prevention." *Id*. § 7401(c). Congress found the Act to be necessary in part because "the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare." *Id*. § 7401(a)(2).

31. Central to the Act is the requirement that EPA establish national ambient air quality standards for certain widespread air pollutants that endanger public health and welfare, referred to as "criteria pollutants." *Id*. §§ 7408-7409. One criteria pollutant is particulate matter. *See* 40 C.F.R. §§ 50.7, 50.13, 50.18, 50.20.

32. The national ambient air quality standards establish allowable concentrations of criteria pollutants in the outdoor air. Primary standards must be set "requisite to protect the public health," including that of sensitive populations such as people with asthma, children, and older adults. 42 U.S.C. § 7409(b)(1). EPA must review and, as appropriate, revise these standards at least every five years. *E.g.*, *id*. § 7409(d)(1).

33. After EPA sets or updates a standard, the implementation process begins. Within one year of the standard's promulgation, states and Tribes must provide EPA with any recommendations for initial area designations, which classify all areas within the state or tribal land as "nonattainment," "attainment," or "unclassifiable" under the standard. *Id*. § 7407(d)(1)(A). A nonattainment area is one that does not meet the standard or that "contributes to ambient air quality in a nearby area that does not meet" the standard. *Id*. § 7407(d)(1)(A)(i). An attainment area is an area that meets the standard and does not contribute to a violation of the standard in a nearby area. *Id*. § 7407(d)(1)(A)(ii). An "unclassifiable" area is "any area that cannot be classified on the basis of available information as meeting or not meeting" the standard, and is treated for regulatory purposes as an attainment area. *Id*. §§ 7407(d)(1)(A)(iii), 7471.

34.    Then, "as expeditiously as practicable, but in no case later than" two years after promulgating or revising a standard, "the Administrator shall promulgate the designations of all areas (or portions thereof) submitted" by states and Tribes. *Id*. § 7407(d)(1)(B)(i); *see also id*. §§ 7601(d)(1), 7602(d). If a state or Tribe does not submit recommendations for an area, the Administrator still must promulgate a designation for that area. *See id.* § 7407(d)(1)(B)(ii). The Administrator must "publish a notice in the Federal Register promulgating" these required designations. *Id.* § 7407(d)(2)(A).

35.    The two-year deadline to promulgate designations "may be extended for up to one year" for certain areas, but only if "the Administrator has insufficient information to promulgate the designations" for those areas. *Id.* § 7407(d)(1)(B)(i).

36.    In deciding how to promulgate these designations, the Administrator may modify a state or Tribe's recommendations, but if he intends to do so, the Administrator must notify the state or Tribe at least 120 days in advance of promulgating the designation. *Id.* § 7407(d)(1)(B)(ii).

37.    A nonattainment designation triggers requirements for states to ensure that air quality in nonattainment areas will attain the applicable standards by specified deadlines. *Id*. §§ 7410(a), (c), 7502, 7513(c), 7513a; 40 C.F.R. pt.51, Subpart Z. Among the protections is a preconstruction permitting program, which requires large new and modified factories and power plants in nonattainment areas to comply with the most protective emission limits and to secure reductions in air pollution from other sources sufficient to at least fully offset the new pollution they will introduce. 42 U.S.C. §§ 7502(c)(5), 7503. Each state must adopt a "state implementation plan" that includes all the protections Congress required for nonattainment areas and any specific measures the state determines should be implemented to address local sources of air pollution contributing to elevated particulate matter levels. *Id*. § 7410(a)(2)(I).

38.    The requirements—and deadlines—for states to adopt the specific programs Congress mandated to control harmful emissions in nonattainment areas depend on the areas being designated nonattainment. *See, e.g.*, *id*. §§ 7502(b), (c), 7503.

39.    When the Administrator fails to perform a non-discretionary duty, such as the duty to promulgate and publish designations of all areas no later than two years after adopting an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                        9

updated national ambient air quality standard, the Clean Air Act authorizes any person to bring suit to compel the Administrator to perform the overdue non-discretionary duty. *Id.* § 7604(a)(2).

**FACTUAL BACKGROUND**

40.    EPA updated the $PM_{2.5}$ standards most recently on February 7, 2024, strengthening the primary annual standard by limiting the maximum annual average level of $PM_{2.5}$ allowed in the ambient air to 9.0 µg/m$^3$, averaged over three years, down from the 12.0 µg/m$^3$ allowed under the prior version of the primary annual standard. Mem. from Joseph Goffman, Ass't Adm'r, EPA, at 1 (Feb. 7, 2024)[1]; *see also* Reconsideration of the National Ambient Air Quality Standards for Particulate Matter, 89 FR 16,202 (Mar. 6, 2024).

41.    EPA's promulgation of the 2024 standard was based on substantial scientific evidence regarding health impacts from exposure to $PM_{2.5}$ pollution, including "quantitative exposure/risk analyses." 89 FR at 16,203. This body of evidence demonstrates that there is a "causal relationship between long- and short-term exposures and mortality and cardiovascular effects" and that there is "likely to be a causal relationship between long-term exposures and respiratory effects, nervous system effects, and cancer." *Id.* This body of evidence also demonstrates that "health effects can occur over the entire distribution of ambient $PM_{2.5}$ concentrations evaluated," as the "epidemiologic studies conducted to date do not identify a population-level threshold below which it can be concluded with confidence that $PM_{2.5}$-associated health effects do not occur." *Id.* at 16,238.

42.    Based on this evidence, EPA's independent Clean Air Scientific Advisory Committee unanimously concluded that the previous annual standard of 12.0 µg/m$^3$ was "not sufficiently protective of public health." *Id.* at 16,253, 16,275.

43.    EPA's promulgation of the 2024 standard was also informed by "strong evidence" that there are "racial and ethnic disparities in $PM_{2.5}$ exposures and $PM_{2.5}$-related health risk." *Id.* at 16,235. In particular, EPA found there is "evidence of health risk disparities for both Hispanic

---

[1] Available at https://www.epa.gov/system/files/documents/2024-02/pm-naaqs-designations-memo_2.7.2024-_-jg-signed.pdf.

and non-Hispanic Black populations compared to non-Hispanic White populations for cause-specific mortality and incident hypertension." *Id.* EPA's risk assessment also demonstrated that "disparities by race and ethnicity persist even at an alternative standard level of 8 $\mu g/m^3$." *Id.* at 16,251.

44.    EPA estimated that implementation of the 2024 standard would yield up to $46 billion in net benefits for public health, including "up to 4,500 avoided premature deaths, 800,000 avoided cases of asthma symptoms, and 290,000 avoided lost workdays (in 2032)." EPA, *Final Rule to Strengthen the National Air Quality Health Standard for Particulate Matter, Fact Sheet* 1 (Feb. 7, 2024).[2]

45.    EPA's strengthening of the $PM_{2.5}$ standard on February 7, 2024, triggered the Administrator's non-discretionary duty to promulgate air quality designations for all areas of the country—via publication in the Federal Register—as expeditiously as practicable, but no later than February 7, 2026. *See* 42 U.S.C. § 7407(d)(1)(B)(i), (d)(2)(A).

46.    Some 45 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, and 3 Tribes submitted designation recommendations to EPA. *See* Earthjustice, *Assessing 2024 $PM_{2.5}$ Standard Implementation So Far: Who's on Track to Get Clean Air and Who's Left Behind* 7-8 (Nov. 2025), https://earthjustice.org/wp-content/uploads/2025/12/ej_pm2.5-whitepaper_final_v5.pdf.

47.    They did so with ample guidance from EPA regarding what kind of information it needed to make final designations. *See, e.g.*, EPA, *Particle Pollution Designations Memorandum and Data for the 2024 Revised Annual $PM_{2.5}$ NAAQS* (last updated Feb. 4, 2026), https://www.epa.gov/particle-pollution-designations/particle-pollution-designations-memorandum-and-data-2024-revised#B.

48.    As of the February 7, 2026, statutory deadline, the Administrator had not promulgated designations under the 2024 standard for all areas of the country, as required by the Clean Air Act.

---

[2] Available at https://www.epa.gov/system/files/documents/2024-02/pm-naaqs-overview.pdf.

49. As of the date of this filing, the Administrator has not promulgated a single designation under the 2024 standard for any area. The Administrator also has not notified any state or Tribe that he intends to modify any of their recommended designations pursuant to 42 U.S.C. § 7407(d)(1)(B)(ii). Nor has EPA attempted to extend its now-passed deadline pursuant to 42 U.S.C. § 7407(d)(1)(B)(i).

50. More than 75 million of the roughly 335 million people in the United States live in the hundreds of counties where the most recent official EPA data reveals that $PM_{2.5}$ pollution levels violate the 2024 standard, including urban areas like Atlanta, Charlotte, Cincinnati, Los Angeles, Pittsburgh, and San Jose, yet EPA has failed to take legally required action to drive their compliance with the 2024 standard. *See* EPA, *$PM_{2.5}$ Design Values, 2024 (xlsx)* (June 3, 2025), https://www.epa.gov/system/files/documents/2025-06/pm25_designvalues_2022_2024_final_05_28_25.xlsx; *see also* Earthjustice, *Assessing 2024 $PM_{2.5}$ Standard Implementation So Far: Who's on Track to Get Clean Air and Who's Left Behind* 8.

**PLAINTIFFS' INJURIES**

51. Plaintiffs' members include individuals who live, work, worship, travel, and/or recreate in areas where air quality violates or has recently violated the 2024 $PM_{2.5}$ standard, including areas that state governors have recommended be designated nonattainment, but for which the Administrator has failed to promulgate designations in the Federal Register in the timeframe required by 42 U.S.C. § 7407(d)(1)(B)(i) and (d)(2)(A), including in cities like Atlanta, Charlotte, Cincinnati, Los Angeles, and Pittsburgh.

52. The acts and omissions of the Administrator alleged herein harm Plaintiffs' members by prolonging air quality conditions that adversely affect or threaten their health, and by nullifying or delaying measures and procedures mandated by the Act to protect their health from $PM_{2.5}$ pollution in places where they live, work, worship, travel, and/or recreate. Indeed, $PM_{2.5}$ levels that exceed the 2024 standard can cause Plaintiffs' members and staff to suffer from adverse health effects such as asthma, chronic obstructive pulmonary disease, cardiovascular disease, and

cancer—causing physical problems that force them to limit activities that they would otherwise be able to do and enjoy.

53.    The acts and omissions of the Administrator alleged herein harm Plaintiffs' members even in areas with air quality that does not violate the 2024 standard. As explained above, studies have found no safe level of $PM_{2.5}$ pollution—it can cause adverse health effects even in communities that comply with the 2024 standard. 89 FR at 16,238. In addition, $PM_{2.5}$ pollution can be transported long distances. *See, e.g.*, *EPA v. EME Homer City Gen.*, 572 U.S. 489 (2014) (considering EPA rule governing interstate transport of fine particulate matter). Thus, the pollution controls required due to nonattainment area designations can and will result in air pollution reductions even in areas meeting the 2024 standard, and those reductions will benefit Plaintiffs' members in both nearby and farther downwind areas.

54.    The acts and omissions of the Administrator alleged herein also harm Plaintiffs' members' welfare interests—including their recreational, aesthetic, spiritual, educational, and professional interests—because their reasonable concerns about the health effects of their $PM_{2.5}$ exposure diminish their enjoyment of activities they engage in or would like to continue to engage in, and of areas they visit or would like to continue to visit.

55.    The acts and omissions of the Administrator alleged herein further deprive Plaintiffs and their members of procedural opportunities to protect these concrete interests, opportunities to which they would otherwise be entitled, including, but not limited to, the right to judicially challenge final $PM_{2.5}$ designations adversely affecting their members, the right to enforce requirements of the Act for preparation and implementation of plans to remedy violations of the 2024 $PM_{2.5}$ standard in nonattainment areas and prevent violations in attainment areas, and the right to comment on and judicially challenge such plans.

56.    The acts and omissions of the Administrator alleged herein also hamper certain Plaintiffs' ability to perform certain programmatic functions essential to their missions, such as ensuring that states put in place the public health and environmental protections that accompany nonattainment designations, and educating the public about these protections.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                   13

57. Accordingly, the health, recreational, aesthetic, procedural, and organizational interests of Plaintiffs and their members have been and continue to be adversely affected by the acts and omissions of the Administrator alleged herein.

58. A court order requiring the Administrator to promptly promulgate and publish notice of air quality designations for all areas, as the law requires, would redress Plaintiffs' and Plaintiffs' members' injuries.

## CLAIM FOR RELIEF

59. The allegations of all foregoing paragraphs are hereby incorporated as if set forth fully herein.

### Violation of the Clean Air Act

60. The Administrator was required to promulgate air quality designations for all areas of the country under the 2024 $PM_{2.5}$ standard via publication in the Federal Register "as expeditiously as practicable, but in no case later than" February 7, 2026. 42 U.S.C. § 7407(d)(1)(B)(i), (d)(2)(A).

61. The Administrator failed to carry out his non-discretionary duty of promulgating designations for all areas in the country by the statutory deadline of February 7, 2026, publishing no notices in the Federal Register promulgating any such designations.

62. As of the filing of this Complaint, the Administrator has not promulgated designations for any areas in the country, similarly publishing no notices in the Federal Register promulgating any such designations.

63. The Administrator's failure to promulgate designations, via publication in the Federal Register, constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of the Clean Air Act, 42 U.S.C. § 7604(a)(2), and thus a violation of the Act. The Administrator's violation of this non-discretionary duty is ongoing and will continue unless remedied by this Court.

64. In the alternative, even if the Administrator's duty to promulgate designations were distinct from his duty to publish notice in the Federal Register promulgating such designations, the Administrator has failed to complete each such duty, each constitutes a "failure of the

Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of the Clean Air Act, 42 U.S.C. § 7604(a)(2), and is thus a violation of the Act. The Administrator's violation of these non-discretionary duties is ongoing and will continue unless remedied by this Court.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Declare that the Administrator's failure to timely promulgate air quality designations for all areas of the country under the 2024 national ambient air quality standard for fine particulate matter, via publication in the Federal Register, by the deadline established by 42 U.S.C. § 7407(d)(1)(B)(i) constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of 42 U.S.C. § 7604(a)(2);

(2) Enjoin the Administrator from continuing to violate the above-described non-discretionary duty;

(3) Order the Administrator to promulgate air quality designations for all areas of the country under the 2024 national ambient air quality standard for fine particulate matter via publication in the Federal Register forthwith;

(4) Retain jurisdiction to ensure compliance with the Court's decree;

(5) Award Plaintiffs the costs of this action, including attorneys' fees; and,

(6) Grant such other relief as the Court deems just and proper.

Dated: April 13, 2026

Respectfully submitted,

/s/ Colin C. O'Brien[3]
Colin C. O'Brien, CA Bar No. 309413
Earthjustice
1 Sansome Street, Suite 1700
San Francisco, CA 94104
Tel: 415-217-2000/Fax: 415-217-2040
cobrien@earthjustice.org

Sage Lincoln, PA Bar No. 333682
Pro hac vice pending
Seth L. Johnson, DC Bar No. 1001654
Pro hac vice pending
Earthjustice
1250 I (Eye) Street NW, 4th Floor
Washington, DC 20005
(202) 830-3311
(202) 797-5245
slincoln@earthjustice.org
sjohnson@earthjustice.org

Counsel for Alliance of Nurses for Healthy
Environments, American Lung Association,
American Public Health Association, American
Thoracic Society, Center for Biological
Diversity, Northeast Ohio Community
Resilience Centre, Rio Grande International
Study Center, and Sierra Club

/s/ John Walke
John Walke, DC Bar No. 450508
Pro hac vice pending
Emily Davis, CA Bar No. 314152
Sheena Patel, DC Bar No. 90029725
Pro hac vice pending
Natural Resources Defense Council
1152 15th St NW, #300
Washington, DC 20005
(202) 289-6868
jwalke@nrdc.org
edavis@nrdc.org
spatel@nrdc.org

Counsel for Natural Resources Defense
Council

/s/ Hayden W. Hashimoto
Hayden W. Hashimoto, CA Bar No. 325150
Shaun A. Goho, MA Bar No. 652287
Pro hac vice pending
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(617) 624-0234
hhashimoto@catf.us
sgoho@catf.us

Counsel for Citizens for Pennsylvania's
Future, Clean Air Council, Conservation
Law Foundation, and Michigan
Environmental Council

/s/ Caroline Cress
Caroline Cress, NC Bar No. 63104
Pro hac vice pending
Southern Environmental Law Center
136 E. Rosemary Street, Suite 500
Chapel Hill, NC 27514
(919) 967-1450
ccress@selc.org

Counsel for CleanAIRE NC, Georgia
Interfaith Power & Light, and Savannah
Riverkeeper

---

[3] Pursuant to Civil L.R. 5-1(i)(3), I attest that all other signatories have concurred in the filing of this document.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    16

*/s/ Richard Yates*
Richard Yates, CA Bar No. 348185
Environmental Defense Fund
2060 Broadway
Suite 300
Boulder, CO 80302
(415) 293-6083
ryates@edf.org

*Counsel for Environmental Defense Fund*